**TRIO INDUSTRIES, INC., Plaintiff,**

v.

**JOSEPH E. BENNETT CO., Inc.,
Defendant.**

**Civ. A. No. 59-911.**

United States District Court
D. Massachusetts.

April 18, 1961.

Donal O'Callaghan, Boston, Mass., for plaintiff.

Harold M. Linsky, Boston, Mass., for defendant.

CAFFREY, District Judge.

This is a diversity action sounding in contract. The plaintiff is a corporation organized under the laws of the State of New York, and maintains a usual place of business in Bridgeport, Connecticut. The defendant is a corporation organized under the laws of the Commonwealth of Massachusetts, and maintains a usual place of business in Brookline, Massachusetts.

Plaintiff's complaint contains two causes of action. The first is based on a contract entered into between the parties on January 29, 1957, under which plaintiff, as a subcontractor, for a consideration of $34,000, undertook to do certain work, consisting of furnishing the aluminum curtain wall of a building for which defendant was the general contractor under a contract between defendant and the U. S. Army Corps of Engineers. A "curtain wall" is a non-load-bearing wall that closes voids in the exterior of a building.

In its first cause of action, plaintiff alleges complete performance by it of all its obligations under the contract in accordance with the applicable plans and specifications, and seeks recovery of $4124.66. In its second cause of action, plaintiff claims that defendant breached the contract, first by failing to provide plaintiff with certain detail drawings of masonry, stone, and steel work necessary in order for plaintiff to prepare its plans and drawings, and secondly, by failing to supply plaintiff with "prepared openings" in the building at the time plaintiff was

required to commence its performance of the contract, which failure resulted in plaintiff's being obliged to incur substantial additional expense in order to complete its performance as required under the contract. In its second cause of action, as amended, plaintiff seeks recovery of $7,401.50.

The defendant; in its answer, denies a breach of the contract; alleges that the $10,000 jurisdictional amount is not involved herein; and counterclaims for $18,770 by reason of alleged breach of contract on the part of plaintiff. Defendant says that plaintiff failed to have its plans approved on time and also failed to begin or to complete its work on time.

The case was tried to the Court without a jury and at the close of all the evidence the defendant filed a motion to dismiss on the basis of lack of the jurisdictional amount and, also, a motion for judgment on the second cause of action on the grounds of failure of proof. Both motions were denied.

I find that Joseph E. Bennett Co., Inc. entered into a contract on November 19, 1956, with the U. S. Army Corps of Engineers, for the construction of the Administration Building, St. Lawrence Seaway, Massena, New York. This contract bore the Identification DA–30–023– CIV–ENG–57–33 and called for payment of $708,200 to the Bennett Company. It provided for the work to be completed not more than 400 calendar days from receipt of notice to proceed. The notice to proceed was received by the defendant on November 28, 1956. Thereafter, the defendant entered into negotiations with the plaintiff, Trio Industries, Inc., which culminated in the execution of a contract between defendant and plaintiff on January 29, 1957. This contract obligated the plaintiff, as subcontractor, to furnish all labor, materials, equipment, and supervision necessary to erect the aluminum curtain wall system, aluminum sills, two aluminum plaques, and aluminum letters, for the Administration Building, in accordance with the prime contract and plans and specifications thereto. Plain-

tiff was obligated, also, to furnish shop drawings, samples, and certificates, and to secure necessary approvals thereof from the Corps of Engineers.

The contract required that shop drawings setting out in detail the exact dimensions of the aluminum curtain wall would be prepared by plaintiff. The manager of plaintiff's Erection Department, Edward L. Cairns, a qualified engineer, testified that the customary and usual practice in the building trade was for these aluminum shop drawings to be made by draftsmen employed by the aluminum subcontractor at a time subsequent to the delivery by the general contractor to the aluminum subcontractor of detailed drawings prepared by the masonry, stone, and steel subcontractors. After execution of the contract in the instant case, the first activities of the parties, spread over a period of some months, were concerned with the preparation and obtaining of approval of the Corps of Engineers of the shop drawings for the aluminum subcontract.

I find that the usual practice in the building trade is for the general contractor to receive the detailed shop drawings from the various subcontractors and for the general contractor then to obtain approval of the owner or the architect. I find that contrary to this usual practice, the defendant Bennett Company, the general contractor, required the plaintiff Trio to submit its proposed shop drawings directly to the Corps of Engineers for approval. I further find that the first plans submitted by plaintiff to the Corps of Engineers were not approved, due to inaccuracies relating to masonry openings and entrance units, and I find that these inaccuracies were attributable to Bennett Company's failure to supply Trio Industries with the detailed drawings relating to masonry and entrance units. I further find that the first notice plaintiff had that the usual practice was not to be followed in this case, was contained in a letter from defendant to plaintiff dated April 29, 1957. Thereafter, on May 2 and May 16, 1957, plaintiff submitted plans to the Corps of

Engineers for approval and by June 10, Plans 1, 2 and 3 were disapproved and Plans 4 and 5 were approved. Plans 1, 2 and 3 were resubmitted by plaintiff on June 19 to the Corps of Engineers and were finally approved on June 28, 1957. I find that the delay in obtaining approval of these plans was due to the failure of the Bennett Company to supply Trio Industries with shop drawings relating to masonry, steel, stone, and vestibule entrances. I further find that the late approval of the plans is not material to the delays in constructing the building and, in fact, the president of the Bennett Company admitted that the late plans did not result in any delay prior to the pouring of the concrete, which was completed on August 23, 1957.

Defendant, at the trial, attempted to demonstrate that plaintiff was responsible for defendant's failure to complete the building within the 400 day period after receipt of the notice to proceed, i. e., by January 4, 1958. The building was accepted by the Government on March 3, 1958. Defendant's progress chart called for the curtain wall erection to begin on June 15, 1957 and to be finished on August 15, 1957. I find that the building was not ready on June 15, 1957 to receive the aluminum curtain wall. In fact, the Corps of Engineers notified defendant that as of July 1, 1957 the building was only 17 per cent completed whereas it should have been 35 per cent completed at that time. Plaintiff was in no way responsible for this lag as of July 1, 1957, which was characterized as "substantial" by the Government's chief of construction (called as a witness by defendant), and I so find, having in mind that some seven months after receiving the notice to proceed the defendant was about 50 per cent behind schedule. I find that the Bennett Company took the position that the job was ready to receive plaintiff's work on September 20, 1957 (Ex. 30), some three months after the starting date for plaintiff's work set forth in defendant's progress chart. Contrasting this three month delay, which I find was attributable to failure of the building to progress on schedule to a point where it was in a proper condition to receive plaintiff's performance, with the two months delay in ultimate completion and acceptance by the owner (January 4 to March 3, 1958), I find that plaintiff was not responsible for the two month delay in completion and acceptance.

A great deal of the testimony in this case revolved about the question of whether or not the construction of the building had progressed to the point at which it could be said that the "prepared openings," which under the contract defendant was required to provide, and into which plaintiff was to install the curtain wall, were in fact in existence and in a proper condition to receive the curtain wall on September 20, 1957, or at an earlier or later date. On this question, both parties offered testimony of their respective field superintendents and of expert witnesses. Plaintiff offered the testimony of Clark Macomber, president of Macomber Enterprises, who, I find, has erected many substantial buildings which utilized aluminum curtain walls in their construction, including buildings of the First Federal Savings & Loan Association of Boston, the Merchants National Bank of Boston, Sargent College of Boston University, the Salada Tea Company on Route 128, and the Raytheon plant in Westwood, Massachusetts. He testified, and I find, that as used in the building trade, a "prepared opening" means a building under construction in which the surrounding materials of stone, masonry, metal, etc., are in place and ready to receive a curtain wall or a window section. Mr. Macomber also testified, without objection, in corroboration of Trio's Engineer, Mr. Cairns, that the proper way to process and coordinate the erection of a building of the type involved herein is for the general contractor to get and deliver to the aluminum subcontractor, the detailed drawings for the stone and steel subcontracts prior to preparation of the aluminum detailed drawings. He testified that it is not ordinary practice for the subcontractor to submit plans directly to the architect or owner for approval.

Mr. Macomber examined photographs of the job site taken, respectively, on or about August 20, and on or about September 25, 1957, and after such examination gave his opinion that there was no change in the condition of the building—with regard to the existence of prepared openings—between those two dates, and that the prepared openings were not in existence and ready to receive plaintiff's aluminum material on the dates of these photographs. Plaintiff's foreman testified that the condition of the building on October 2, 1957 was the same as that shown by these photographs and I so find. Mr. Macomber also testified that the condition of the building as disclosed by the photographs would necessitate the expenditure by Trio Industries of more man hours on the installation of the curtain wall than would be necessary had prepared openings been in existence. He further expressed the opinion that the installation of stone work after the aluminum has been put in place is bad practice, for the reason that the handling of masonry against thin gauge aluminum is not considered advisable in the building trade.

■ I find that at the time the defendant required plaintiff to commence erection of the aluminum curtain wall, prepared openings were not in existence in accordance with the provisions of the contract between the parties. I further find that plaintiff duly advised defendant in writing, by letter dated October 2, 1957 (Plaintiff's Exh. 35) that they were proceeding with the erection under protest, since as of that date construction had not progressed to the point where the building was ready for the aluminum curtain walls in accordance with good building practice. I further find that the work required to be performed by the plaintiff was completed according to plans and specifications, and that the building

was accepted by the Government as owner, and I find that plaintiff is entitled to recover under the contract the balance claimed due in its first cause of action, namely $4,124.66.

■ With regard to plaintiff's second cause of action, seeking "extras" by reason of defendant's insistence that plaintiff perform its portion of the erection of the building in question at a time before other work on the building had progressed sufficiently so that it was in proper condition for the erection of the aluminum curtain walls, I find that plaintiff has incurred certain additional expenses due to this method of procedure for which plaintiff may hold defendant liable.

■ Plaintiff claimed, through the testimony of its Comptroller, that it was required to expend approximately 800 more hours in the erection of the aluminum curtain wall than would have been necessary under normal working conditions had the "prepared openings" been properly readied prior to commencement of plaintiff's performance of its part of the contract. I find that plaintiff's claim to this overtime is substantiated only to the extent of 383 additional man hours, for which I find plaintiff is entitled to be compensated in the amount of $1,436.25, and, also, to the extent of $261.24 for board, room, travel, etc. of one W. Makyczyk, foreman of plaintiff's Fabrication Department, who was sent to this job because of special conditions encountered therein, consisting of defendant's insistence that plaintiff commence its erection work prior to completion of the prepared openings. I find that plaintiff is entitled to recover on its second cause of action, therefore, the amount of $1,697.49.

Judgment is to be entered for the plaintiff in the total amount of $5,822.15, with costs.